# Broughton *v.* Wimberly.

*Bill in Equity between Sureties, for Contribution.*

1. *Contribution between sureties; jurisdiction of equity.*—A surety may maintain a bill in equity against his co-surety, for contribution, although he has also a remedy by action at law.

[Broughton v. Wimberly.]

2. *When decree is final, and will support appeal.*—Under a bill for contribution between two co-sureties, several defenses being set up by answer and cross-bill, alleging defendant's discharge, a special agreement among the several sureties as to the extent of their respective liabilities, and the complainant's liability to account for money or property received by him as trustee for all the sureties,—as to all of which matters the evidence was conflicting; a decree rendered on a hearing on pleadings and proof, in these words : "Upon consideration, it is ordered that complainant is entitled to relief; and the matter is referred to the register, to ascertain and report, at this term, the amount paid by the complainant on the notes, with interest to date, and what one half of such amount may be, and the demurrers to the cross-bill are overruled," is not such a final decree as will support an appeal.

APPEAL from the Chancery Court of Butler. Heard before the Hon. H. AUSTILL.

GAMBLE & BOLLING, for appellant.

D. BUELL, *contra.*

STONE, J.—The case made by the bill is, that complainant, Wimberly, and defendant, Broughton, with certain other persons, who are insolvent and not sued, were co-makers and co-principals in the execution of certain promissory notes ; that suit was brought on the notes, and a judgment recovered; and that complainant has been compelled to pay, and has paid, more than his share of the liability. The purpose and prayer of the bill are, to obtain contribution from Broughton, the only solvent co-maker of the notes. It was assigned as ground of demurrer to the bill, that complainant had a complete and adequate remedy at law. There is nothing in this objection. Originally, courts of equity alone could grant the relief prayed in this bill. It is no answer to this suit that courts of law now grant similar relief. The jurisdictions are simply concurrent.—Code of 1876, § 3412 ; *Couch v. Terry*, 12 Ala. 225 ; *Sherrod v. Rhodes*, 5 Ala. 683 ; *Buckner v. Stewart*, 34 Ala. 529.

The defense in this case is made both by answer and cross-bill. It assumes different phases. One defense relied on is, that when the notes were executed, it was agreed among the co-makers that, as between themselves, neither should be liable to pay on the notes a greater sum than he had subscribed to the subscription paper, gotten up for the purpose of founding the *South Alabama Female College* ; that Broughton had subscribed only two hundred dollars ; and it is claimed that his liability can not be extended beyond that sum. It is not shown, or claimed, that he has paid any thing. The notes are signed by seven persons, signing themselves "*Trustees So. Ala. Fem. Col.*" ; but the promise to pay is personal. Most of these signers were examined as

witnesses, and their several accounts of the transaction are very different. Some testify there was such agreement, while others never heard of it. Wimberly, the complainant, testifies there was no such agreement. The notes were given to secure the payment of the purchase-money for a site on which to erect the college ; a title to the property being taken to the trustees, and a contemporaneous mortgage, with power of sale, executed by the trustees, to secure payment for the property. The witnesses who testify to such agreement, do not agree in their several statements. Some say it was stated as a legal proposition, that signing as they did, they did not thereby fix a personal liability on themselves. Others say there was an agreement that neither should be bound to the others beyond the sum by him subscribed. In this connection, it may not be out of place to note, that the two notes executed by the trustees amounted to the sum of thirty-two hundred and fifty dollars, principal, and the whole amount of the subscriptions by the seven signers of the notes was about fifteen hundred dollars. The entire subscription-list to the *South Alabama Female College*, or high school, aggregated near ten thousand dollars. Now, whether there was any such agreement, and, if made, what were its terms, was, and is, a question which can be decided only on a weighing of the evidence.

A second defense relied on by Broughton is, that Wimberly accepted from one of the co-makers one hundred and fifty dollars, in full satisfaction and discharge of such co-maker's liability to contribute. If this be true, it limits complainant's right of recovery. The testimony on this point is conflicting, and will have to be weighed in determining whether or not there was such agreement to discharge.

The cross-bill of Broughton raises a third ground of defense. It avers that at the mortgage sale of the property, the consideration of the notes, Wimberly became the purchaser, at about twelve hundred dollars, received a deed, and has since enjoyed the rents and profits ; and that the property so bought was and is worth twenty-five hundred, or three thousand dollars. The cross-bill claims that all the co-makers are entitled to share in this purchase and its profits, and in the rents received ; and in this way that Wimberly has been paid and indemnified. The testimony as to the value of this property is conflicting. There is no legal testimony that, when Wimberly purchased, there was any agreement that any of the other co-makers should share in the purchase. Wimberly paid the purchase-money, and the cross-bill contains no offer to refund to him.

The decree of the chancellor, from which the present

appeal is prosecuted, is in the following language : " Upon consideration, it is ordered, that complainant is entitled to relief. The matter is referred to the register, to ascertain and report to this term the amount paid by complainant on the notes, with interest to date, and what one-half of such amount may be. The demurrers to cross-bill are overruled." This decree was rendered October 17th, 1877, and the security for costs of appeal was executed, and the appeal taken, more than thirty days afterwards. This is not an appeal from the interlocutory order, overruling the demurrer. Code of 1876, § 3918.

" A decree is final, when it ascertains all the rights of the parties in litigation."—*Bank v. Hall*, 6 Ala. 141 ; *Weatherford v. James*, 2 Ala. 170. " The test of the finality of a decree, so as to support an appeal, which our decisions have prescribed, is, not whether the cause is still in progress in the Court of Chancery, awaiting further proceedings which may be necessary to entitle the parties to the full possession and enjoyment of the rights it has been declared they have ; but whether a decree has been rendered settling these rights." *Jones v. Wilson*, 54 Ala. 50.

The present decree does not ascertain the rights of the parties, nor does it determine · the principle on which complainant's relief should be measured. . Neither does it determine what modification of relief the defendant was entitled to, under his cross-bill. On these subjects, the chancellor did not commit himself, and we do not know what he intended. For aught that we can know, he intended to confine the complainant in his recovery to the two hundred dollars subscribed by Broughton—to allow him half the payment he had made or one third—or to make him, in some way, account for the alleged profit on his purchase at the mortgage sale. These disputed questions, arising out of the pleadings and evidence, are all left unsettled ; and hence it follows, that the decree does not ascertain all the rights of the parties in litigation. Our jurisdiction, in matters of this kind, is appellate only, and is confined to appeals from final judgments or decrees.—Code of 1876, § 3916.

The appeal is dismissed.